IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,


V.                                                              CASE NO.: 13-CR-087 (FJS)


TERRELL WRIGHT,

                Defendant.

_____


# **SENTENCING MEMORANDUM**


DATED:   March 26, 2014                LISA A. PEEBLES
                                                        Federal Public Defender

                                By:

                                                Melissa A. Tuohey, Esq.
                                                Assistant Federal Public Defender
                                                Bar Roll No. 510807
                                                Clinton Exchange, 3rd Floor
                                                4 Clinton Street
                                                Syracuse, New York  13202
                                                (315) 701-0080

**PRELIMINARY STATEMENT**

On September 19, 2013, Terrell Wright pled guilty to a three-count Indictment that charges him with Assault of a Federal Officer with a Deadly Weapon, Use of a Weapon in Relation to a Crime of Violence, and Felon in Possession of a Firearm, in violation of 18 U.S.C. § 111(a)(1) and §111(b); 18 U.S.C. § 924(c)(1)(A) and §924(c)(1)(A)(ii); and 18 U.S.C. § 922(g)(1) and 18 U.S.C. § 924(a)(2), respectively.  Wright is scheduled for sentencing on April 16, 2014.

A Presentence Report (PSR) was prepared by the United States Probation Department on January 24, 2014.  According to the PSR, Wright's total advisory offense level is 34 and his Criminal History Category is VI, thereby setting his advisory guideline range of imprisonment at 262 to 327 months.  This advisory guideline calculation stems from the PSR's classification of Wright as a Career Offender under U.S.S.G. § 4B1.1 and includes the mandatory term of 7 years imprisonment on Count 2 of the Indictment.  As will be set forth more fully below, Wright seeks non-application of the advisory Career Offender guideline.  Additionally, Wright objects to application of a 4-level enhancement under U.S.S.G. § 2K2.1(b)(6)(B) to his non-career offender guideline offense level.

This Memorandum is submitted on behalf of Wright in support of a sentence "sufficient, but not greater than necessary" to achieve the statutory purposes of punishment as required by 18 U.S.C. § 3553 (a)(2), and  in light of *United States v. Booker*, 125 S.Ct. 738 (2005).

**WRIGHT SEEKS NON-APPLICATION OF THE CAREER OFFENDER GUIDELINE**

The Career Offender guideline is merely advisory and the Court has broad discretion over application of this guideline to the facts of this case.  Even prior to *Booker*, Courts considered a combination of factors to determine whether a departure from the Career Offender Guideline was

appropriate, such as, youth and proximity in time of the prior offenses. *See United States v. Bowser,* 941 F.2d 1019, 1024-25 (10th Cir. 1991); *United States v. Shoupe,* 988 F.2d 440 (3d Cir. 1993); *United States v. Brown,* 985 F.2d 478, 482 (9th Cir. 1993). The advisory sentencing guidelines explicitly acknowledge that over-representation of the seriousness of a defendant's criminal history is an appropriate consideration for a downward departure. *See* U.S.S.G. § 4A1.3.

The PSR applies the advisory Career Offender Guideline under U.S.S.G. § 4B1.1 causing a drastic increase in Wright's advisory guideline range of imprisonment. Much research has been conducted regarding the career offender guideline, and it is seen as the most severe and least likely to promote sentencing purposes.[1] The guideline range is set to the statutory maximum of the offense at issue. Neither the severity of the guideline nor its breadth is the product of careful study, empirical research, or national experience. Judges "may vary [from guideline ranges] based solely on policy considerations, including disagreements with the Guidelines," *Kimbrough v. United States*, 552 U.S. 85, 101 (2007)(internal quotation marks omitted), particularly when the Commission did not act in "the exercise of its characteristic institutional role," *i.e.,* did not base a guideline on "empirical data and national experience." *Id*. at 109.

### 1. The Prior Convictions (PSR ¶¶ 31 & 32)

The PSR relies upon two prior convictions to apply the Career Offender enhancement. The first conviction involved conduct that occurred seven years prior to the commission of this offense when Wright was 20 years old and involved 3.4 grams of crack cocaine and a small

---

[1] *See, Deconstructing the Career Offender Guideline,* Amy Baron-Evans, Jennifer Niles Coffin, Sara Noonan, August 29, 2008, p. 1. This article can be found at www.fd.org.

amount of marijuana. (PSR ¶ 31). Wright was sentenced to 1 year imprisonment and 1 year of post release supervision for these offenses. The second qualifying offense occurred in 2008 and involved unknown quantities of crack cocaine and marijuana. Wright was sentenced to 42 months' imprisonment and 18 months of post release supervision. These two prior convictions have exposed Wright to over 20 years' incarceration for this offense under the career offender guideline, which is the statutory maximum on Count 1 of the Indictment.

When creating the Career Offender provision, Congress had in mind "repeat drug traffickers" who were those making large amounts of money with "established substantial ties outside the United States from whence most dangerous drugs are imported into the country." [2] This description does not include people like Wright, who instead is a typical repeat offender, selling to support himself and his family.[3] "Thus, while Congress had in mind wealthy big time dealers with a record of federal drug trafficking offenses, the career offender guideline usually applies to repeat small time dealers with a record of relatively minor state offenses."[4] Additionally, the Sentencing Commission has found that the guideline has a disproportionate impact on African American defendants and that it advances no sentencing purposes. [5]

Additionally, Wright's offense level is truly driven by the Felon in Possession of a Firearm guideline, not the Assault of a Federal Officer with a Deadly Weapon guideline which is

---

[2] *See, Deconstructing the Career Offender Guideline,* Amy Baron-Evans, Jennifer Niles Coffin, Sara Noonan, August 29, 2008, p. 12.

[3] Id.

[4] Id. at 13.

[5] Id.

the offense that triggers application of the career offender guideline.  (PSR ¶¶ 16-21).  Although counts 1 and 3 are grouped for sentencing purposes, Wright's base offense level is calculated under U.S.S.G. § 2K2.1.  The PSR applies an enhancement of the Assault offense, which is objected to below.

Sentencing Wright in a range of 262 to 327 months' imprisonment under these circumstances pursuant to a guideline that is not the product of empirical research or study would create an unreasonable result.

### APPLICATION OF U.S.S.G. § 2K2.1(b)(6)(B) IN ADDITION TO WRIGHT'S CONVICTION AND MANDATORY CONSECUTIVE SENTENCE OF 7 YEARS UNDER 18 U.S.C. § 924(c)(1)(A)  AMOUNTS TO IMPERMISSIBLE DOUBLE COUNTING

If the Court agrees not to apply the career offender guideline, then Wright's guideline calculation under U.S.S.G. § 2K2.1 becomes relevant again.  The PSR applies a 4-level enhancement pursuant to U.S.S.G. § 2K2.1(b)(6)(B) based upon the fact that Wright used or possessed a firearm in connection with another felony offense, to wit, Assault of a Federal Officer.  (PSR ¶ 17).  At the same time, Wright has separately been convicted of that offense in Count 2 of the Indictment.  That offense carries no small penalty.  In fact, the Court is required to sentence Wright to no less than 7 years for that offense and it must be imposed to run consecutively to the sentence on Count 1 of the Indictment.  As such, Wright is being punished twice for the same act which amounts to impermissible double counting.

"Impermissible double counting occurs when one part of the [G]uidelines is applied to increase a defendant's sentence to reflect the kind of harm that has already been fully accounted for by another part of the [G]uideline."  *United States v. Volpe*, 224 F.3d 72, 76 (2d Cir. 200).

4

When the enhancement aims at different harms emanating from the same conduct, then there will be no impermissible double counting. *Id*.

Here, Wright has received a four-level enhancement for using a firearm during the commission of an Assault of a Federal Officer. Wright has separately pled guilty to this conduct set forth in the enhancement. The elements of the offense of 18 § 924(c)(1)(A) are that (1) Wright committed a crime of violence and (2) that he knowingly used a firearm during and in relation to the commission of that offense. As such, Wright's conviction under 18 U.S.C. § 924(c)(1)(A) fully accounts for the conduct set forth in the enhancement under § 2K2.1(b)(6)(B). Additionally, Application Note 4 to U.S.S.G. § 2K2.4, the guideline pertaining to 18 U.S.C. § 924 (c), calls for non-application of this sentencing enhancement. Specifically, the note states:

> If a sentence under this guideline is imposed in conjunction with a sentence for an underlying offense, do not apply any specific offense characteristic for possession, brandishing, use, or discharge of an explosive or firearm when determining the sentence for the underlying offense.

*See*, U.S.S.G. § 2K2.4, comment., n. 4.

Based upon the foregoing, Wright's non-career offender advisory guideline range would be reduced to 70 to 87 months imprisonment. Under U.S.S.G. § 2K2.1, his base offense level would be 24 and he would receive a three level reduction for acceptance of responsibility lowering his total offense level to 21.

### 18 U.S.C. § 3553(a) FACTORS

*1.  Background and Characteristics of Wright*

During his PSR interview, Wright was open and candid about his background and the unfavorable choices he has made during his lifetime that have led him to where he is now.

5

Wright admits to taking to the streets and dropping out of school despite his mother's best efforts to keep him on the right path. Wright, now 29 years old, grew up in a section of the City of Syracuse rife with crime and gang activity. He grew up without a male role model and was raised by his mother and his paternal grandmother, Dorothy Wright. Wright's mother worked full time to support Wright and his siblings. His father, Louis Wright, Jr., was addicted to heroin and crack cocaine and barely present in Wright's life. Wright's family struggled financially and they often went without heat and food. (PSR ¶ 47).

Wright dropped out of school in the 9th grade and he has never held employment. He openly admits that he supported himself and his family through selling drugs. This lifestyle choice landed him in prison at a young age. Wright became involved with the law for the first time when he was only 14 years old when he was found in possession of a loaded firearm. (PSR ¶ 28). During his time in prison, Wright obtained his GED and completed both horticulture and food administration vocational programming.

At the young age of 12, Wright began using marijuana and by the age of 14 he was a daily user. Four years later, he picked up ecstasy and used it on a daily basis for five months in addition to marijuana. While in prison Wright attempted drug treatment but was not successful in the beginning. He also had difficulty initially while on New York State Parole. However, after violating parole in August of 2007, he was sent to Willard Drug Treatment Campus and he was able to successfully complete the program. He did well at Willard and he liked the program. When he came out of Willard, he continued outpatient treatment at Crouse Dependency Treatment services between October and December of 2012. Wright did well and attended outpatient treatment three times per week and he had no positive drug tests between October and

6

December of 2012.  This was a great accomplishment for Wright who had continually been using marijuana since the age of 12.  He was discharged from treatment as a result of this arrest.

The stable force in Wright's life is his fiancé and the mother of his three children, Anisha Montgomery.  They have been together for eight years.  During his incarceration for this offense, Ms. Montgomery gave birth to their third child.  Wright has been detained at Montgomery County Jail and it has been difficult for Ms. Montgomery to make the five hour round trip with her children to see Wright.  This has been extremely difficult for everyone.  Ms. Montgomery is employed as a certified nurse's aid at a senior living and rehabilitation center.  Additionally, she is attending Onondaga Community College to become a registered nurse.

The people that know Wright the best, his siblings, his mother, his grandmother, and his fiancé, describe him as a loving and good man.  His sister, Talarisha Moore, describes the night when she was left without a prom date and Wright stepped in and used his money to take his sister to her prom.  She speaks of how he helped neighbors by shoveling their driveways during winter storms.  She describes how he was as a father when he was not in prison and how he regrets how his conduct caused him to miss the birth of his third son.

Wright's other sister, Tarisha Sheard speaks about how Wright cared for her after she had open heart surgery by decorating her room and waiting on her hand and foot when she returned home.  She remembers when Wright was young, he was active in sports and full of life.  She believes he got swept into the wrong crowd in an effort to earn money to help support his family.

Wright's grandmother, Emma Norvel, speaks about the conversations she has had with Wright about this offense during his incarceration and how he recognizes how terribly dangerous this situation was.  She has heard the sadness in his voice about not being there for his mother

who is ill and for not being a father to his children.

Wright's mother, Millicent Davis, knows that her son understands the seriousness of these charges. She states that Wright's largest fear is that his sons will follow in his footsteps. She speaks about her son's good heart and loving nature but does not fail to account for his actions. She feels he has learned from this offense and is taking responsibility for his actions.

All of the people that wrote letters on behalf of Wright describe him as a loving family man who is not violent. They are all shocked by these charges but acknowledge that he has to pay the consequences of his actions. They want to show the Court that he is a good person that made a horrible mistake.

### 2. *Offense Conduct*

There is no question that Wright made the most dangerous mistake of his life on December 18, 2012, that undoubtedly was a terrifying circumstance for the officers involved. He has provided a detailed written explanation for his conduct that is attached to the PSR.

Wright explains that in his lifetime he has been stabbed, shot, cut, and assaulted with a brick in an 8-year period. On the date of this offense, he was walking down the street with his brother and he was carrying a gun with him for protection. He observed an unmarked vehicle with tinted windows abruptly pull up to where he was walking and in a moment of fright, he pulled out the gun he was carrying and pointed it at the vehicle. At that moment, he believed someone was about to do harm to him. As soon as he realized he was pointing a weapon at police officers, he panicked, dropped the gun and he ran. Admittedly, the more prudent decision would have been to drop the gun and stay and face the consequences, but he was not in his right frame of mind. He ran because he was so afraid of the gravity of his mistake. Wright has

accepted full responsibility for his actions by pleading guilty to all charges in the Indictment. He is ready to accept the consequences, but he asks the Court to sentence him outside of the career offender guideline. This request is grounded in his desire to be a father to his children and to be a better role model for them.

If the Court were to sentence Wright within his guideline range of 70 to 87 months in addition to the 7 years he must serve consecutively to that term, he is facing at minimum 12 years imprisonment. This is a hefty sentence that takes into account all of the factors under 18 U.S.C. § 3553(a) by addressing adequate deterrence, the seriousness of the offense, to protect the public from further crimes of the defendant, and the need to provide the defendant with needed educational, vocational training, or other correctional treatment in the most effective manner.

## CONCLUSION

The Supreme Court has returned discretion to the sentencing Courts and reaffirmed the principles that sentencing is a uniquely individualized process which must take into account all circumstances surrounding an offense and the Defendant's background. Based upon the foregoing, counsel respectfully requests that the Court consider imposing a sentence within the non-career offender guideline range of imprisonment of 70 to 87 months that is required to run consecutively to the 7 year mandatory term of imprisonment on Count 2 of the Indictment.

DATED:     March 26, 2014           LISA A. PEEBLES
                                    Federal Public Defender
                              By:   S/Melissa A. Tuohey
                                    Assistant Federal Public Defender
                                    Bar Roll No. 510807
                                    Clinton Exchange, 3rd Floor
                                    4 Clinton Street
                                    Syracuse, New York  13202
                                    (315) 701-0080

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
*********************************************

UNITED STATES OF AMERICA,

    -v-                                      **CERTIFICATE OF SERVICE**

TERRELL WRIGHT,                          CASE NO. 13-CR-087 (FJS)

                    Defendant.

*********************************************

      I hereby certify that on   March 26, 2014  , I electronically filed                
Defendant's Sentencing Memorandum    with the Clerk of the District Court using the CM/ECF System, which sent notification of such filing to the following:

        1.        Carla Freedman, Esq., Assistant United States Attorney

        2.        Courtney A. Tafel, USPO

DATED:      March 26, 2014        Respectfully submitted,

                                            LISA A. PEEBLES
                                            Federal Public Defender

                               By:  S/Melissa A. Tuohey, Esq.
                                           4 Clinton Square, 3rd Floor
                                           Syracuse, New York   13202
                                           (315) 701-0080